May it please the Court, Ben Glassman on behalf of the United States. I'd like to reserve three minutes for rebuttal. You may. Let me tell you what I'm not going to be arguing about this afternoon. I'm not going to be arguing about whether Michael Jackson's original sentence was based on the crack cocaine guidelines within the meaning of 3582 C 2. That's what this court decided in the prior opinion. And although the United States disagrees with that conclusion, my argument this afternoon takes that as a given. So I'm not here to rehash that point unless the court has questions. Instead, I want to make two points. The first one is that Jackson's, uh, that it's just black and white, that the reduction in Jackson's sentence was not consistent with applicable policy statements. And the second point is that this court's prior opinion did not decide that question. It's not consistent with the applicable policy statements, as we've put forward in our brief for two different reasons. First of all, is because Section one B 1.10 says that a guideline amendment has to have the effect of lowering a defendant's quote unquote applicable guideline range, which one B 1.10. And this is the version that's in effect for Jackson. Uh, the 2011 version has changed by Amendment 7 59 defines that applicable guideline range as the range before any departure or variance. There is no dispute in this case. Never has been a dispute that the range applicable to Michael Jackson before any departure or variance is the career offender range 188 to 235 months. Now there at the original sentencing, there was a variance and it went down to, uh, 150 months. And the court in its prior opinion said, Well, that's the crack cocaine guideline range, and so we're going to decide that it was based off that range. Okay, but that was after a departure of variance. And before the departure of variance, the career offender guideline range is the range as defined by the policy statement. That's reason one. Well, haven't you lost that argument in the D. C. Circuit and the both of those two cases that the, uh, applicable applicable guideline range is, you know, before and not after departures and that, um, in those two cases, you have to have a departure to get substantial assistance. And both of those courts disagree with the government's member of those cases. I don't, Your Honor. I apologize that I'm not familiar with the particular cases that the court is referring to. Um, I would love to have an opportunity to address those cases, perhaps after the argument, if the court would be so kind as to provide me with the citations look up, but they are, uh, those two cases. There may be others as well, but the those two cases said that the applicable guideline range provision in 1 B 1.10, uh, was somewhat inconsistent with the idea that you get a reduction or so on. Anyway, I'll try to give you those. I would appreciate that. Judge Meritan, the United States would be very happy to follow up in response to those authorities. I'm just not familiar with them as I stand here this afternoon. Um, I would say that there's a second point regarding the applicable policy statements also set out in our briefs, and that is a limitation on in as to whether and to the extent of any reduction. And that is the policy statement that says, Hey, what the court's supposed to do, the sentencing court is to calculate the amended guideline range, substituting in the new crack amendment and leaving all other guideline determinations in place. And then you can't go below the new range. Well, the problem here for Mr Jackson is that if you substitute in the new crack cocaine guideline, it still ends up getting trumped by for the Chapter four career offender adjustment. So notwithstanding the new crack cocaine guideline, the same following the instructions to keep all other guideline determinations the same, the bottom of his amended guideline range is still 188 months. So the court couldn't reduce if he was been sentenced above 188 months. That would be one thing. But to go below 188 months, the policy statement would be his sense under the new guy. His sentencing guideline range would be 188 to 235 months under the old guy. That would be under the old guidelines except substituting in the new crack cocaine guideline. So you're saying that his is for these purposes is applicable range was the same 188 to 2 35 whether or not you substitute in the new guide. That's right. If you do substitute, if he were to get sentenced today under the new guidelines, what would his sentence? If you were to be sentenced to Novo today, his guideline range would be 1 51 to 1 88. And so you have two prong argument here. First, you say, Well, he couldn't be under. If you if you stuck to the substitution, you couldn't go below 1 88. Even if you waive the substitution, he couldn't go below 1 51. Is that exactly now? Let me ask you this, because when I read that, I said, Wait a minute. He's already sentenced to 1 50, and there was no appeal from that. So it seems kind of anomalous to say that you couldn't reduce it below 1 88 when you're already at 1 50. Or is that just happened to be the way the system works? Well, that's the way it works. I mean, Judge Boggs, if you which means you can't reduce it at all. That's right. That's how it works out as applied to this case. If you if you look at the actual text of 1 b 10, I mean, we're talking about whether and to what extent you can reduce it. And in this case, the way it shakes out the weather ends the inquiry because he was already below by virtue of the district courts having given him the variance the first time he was already below and to put it which way this cuts. But just put it accurately at the original sentence. Judge Frost could have given him 126 months once he started bearing down. He certainly could. Once he is in a resentencing, he has to resentence within the structures of the statute, and the statute just doesn't allow that much of a reduction. My only quibble with that, Judge Boggs, is your characterization of it as a resentencing. Um, I wouldn't only to avoid the implication. Not a complete reason. I believe the terminology usually is. At least I think of it as a resentencing, but a limited resentence. That's fair. A resentencing as described by the Supreme Court in Dillon. If he didn't have a if he didn't have a career offender, um, sons, and he had just been sentenced to 100 and 50 months or whatever, and he saw a reduction. What could he get reduced to? Um, let's see. That would depend on a couple of things. I believe that he could have. I think he could have gotten reduced then under those circumstances to 84 months because that would be a person with the new guidelines substituted in. But assuming that he's not a career offender, right? Is right. Exactly. And I the district court actually went through all these calculations on remand went through. So I don't have any dispute with the numbers. So when you say he went through all these, this is where he actually stayed at 1 50. And then there's another round of argument. Yes. He says, Okay, I'll give you another two years down. The district court actually went through and recalculated the guidelines on the record under the 2011 edition of the guidelines manual. And so how far down did he go? How many months did he go down? He went down to 1 50. At the original sentencing, he went down to 1 50 from 1 88. And this time he went to 1 26. That's why I said two more years. It's 24 months. Yes, that's right. And his justification for that, in effect, was it's a good, it's a good thing to do. His justification for was that he didn't feel like he'd be able to give a good reason for, uh, staying at the same place, assuming no constraints because all the things that caused him to give a variance the first time were still present the second time. So and again, whether the United States agreed or disagreed with that, I mean, we didn't agree. We didn't think he should get a reduction as a matter of discretion, but we're not raising that issue on appeal. You're saying that the key flaw from your point of view is when he said if he were free to do it and you think he's not free to do it because of what the policy statement? Well, I believe that's exactly right. Judge was I think he actually asked the reason. Could I give to Mr Jackson other than you, Mr Kelly? Don't think I have the legal authority to do this. So he was Kelly said, Yes, exactly. He was. The judge was aware of our position that he did not have based on basically on that applicable guideline range argument. It's based on two things. The applicable guideline range argument and you can't reduce it past the amended guideline range, which is still the 1 88. So those air, um, perhaps two sides of the same coin in that they're both an argument that the applicable policy statement, which is incorporated into Section 35 82 C two statutorily precludes the reduction. Any reduction from the 150. Why did he go down from the 1 88? Did he say the first the first time? Um, you know, it's he didn't say explicitly. He said that the career offender issue was there and would stick with him. Stick with Jackson forever. He said that he did think that there was a crack powder problem that was, uh, he thought was a legit issue. Um, and the government didn't appeal the 1 50. We've been. We've been on this rodeo before, and at that point he was there at 1 50 when you last argued it, and you hadn't appealed. That's correct. In fact, if he'd been at 1 26, I don't think we would have appealed that either. But we're here at a different situation in a different issue from the government's perspective. It's not the substance of the ultimate sentence. That's the issue. It's whether the judge was exercising his lawful authority to reduce the sentence. Thank you. Thank you. Time for rebuttal. Thank you. May it please the court. Um, Dennis Belly, Council for it's difficult for me toe to get this right. The Apple II. Um, we we brace three different grounds for opposing the government's appeal. The first is jurisdictional. Our argument is that, um, as Mr Glassman has a full resentencing Section 37 42 B of Title 18 states that only an otherwise final sentence can be appealed. Um, since this is not the final sentence but just a an adjustment or a reduction of a sentence, jurisdiction does not lie to hear the government's opinion. No, no appeal will ever lie. How could it be more final than it is now? Because the original sentence was the final was a final sentence. It's a technical argument. But that means that this thing that this change he could have sentenced him to two months and it would still be not appealable on your argument. That's true. Okay. The second argument is based on the law of the case and the traditional law. The case argument states that the lower court must abide by the ruling of a higher court. And that also applies to the second panel here in a second appeal. And there's also a corollary to the law of the case argument or doctrine, which might also be described as a waiver. And that is that the law of the case includes not only issues actually decided in the prior appeal, but also any issues that could have been raised by the party to an appeal. But that was not raised. And we've cited the dust of the case is one example of that corollary to the doctrine. Uh, Jackson one before oral argument, the government filed a letter of supplemental authority, raising section one B 1.10 as amended. But the guidelines as amended and the confined their argument regarding the amended version of the guidelines solely to the eligibility question, which was decided adversely to the government after the Jackson one ruling, the government also filed a petition for rehearing again, raising you mean by that that they didn't say anything about the applicable guideline range argument or not. They raised one form of it as it applies to the question of Mr Jackson's eligibility for a reduction. But the other component of the government's argument that it's making here today is that okay, we're not arguing or we're not going to re argue the question of eligibility, but it's going to be our argument. The government's argument that the court, even assuming Jackson was technically eligible for reduction, could not get a reduction because his 150 month sentence was already below the maximum possible downward variance or reduction. But the majority opinion didn't say anything one way or the other about that kind of argument, did it? That's true. And so the, um, the strict law, the case doctrine would not bind the guy descent. I said, Okay, you're gonna send it back. It's gonna be futile because of this. But the majority took no position either way on true. And that's why I'm raising the deaths of the variation of the law, the case argument or doctrine, which is also a waiver doc doctrine. And that is that the government failed to make the argument that it's making here today when it could have been decided by this court. So therefore, um, the government cannot use a second appeal to raise an argument that it should have raised in the first appeal. Finally, we would argue that the requirements of playing here in a sense the issue of what might happen on remand. If you got as you did a remand, yes, in a sense, wasn't specifically raised. Correct. Of course, they said you shouldn't get a remand at all. You were successful, and we remanded to see what the judge would do. That's true. But the government and in that remand, we said that the judge could, in his discretion, reduce the sentence. That's true. The court did say that. And, um, the did not make in Jackson one. It did not make the argument that it's making now that, uh, the court would have lacked any discretion to reduce the sentence because, uh, the maximum possible reduction had already been reached. Now, that's what that's the argument that it's making. Now we're submitting that it was well, the panel statement is we and this is from the majority. We respond to you. We take no position as to whether any change is warranted due to the retroactive crack guidelines. Correct. They didn't affirmatively say, You know, we think you can. He said it's up to you, Judge. That's true. And that's why I frame the rule in the deaths of the case is more of a waiver argument than a law of the case argument. That's a the clearly states that a an appealing party. Well, any party to an appeal must make, uh, all the arguments available to that party at the time of the first appeal and not, uh, do things piecemeal and raise a previously available argument for the first time in a second appeal. And that's what we sent back down. And the implication was he had discretion to reduce it, depending on his thoughts about the culpability of the in the case and those things as well as the changes in the crack law and so on. Well, that's true. And and and the judge, Judge Frost was concerned about these reductions in the case. This is the case in which he had earlier waited and waited. That's right. He waited a long time and finally said, You know, I would go. He finally, um, ruled, but he indicated he didn't like it. That's true. And if he had been a patient by a couple more weeks, uh, he would have had the new, uh, uh, the Fair Sentencing Act would have been, uh, enacted. And what could he have done under that if he had had it? Well, he he wanted to see to what extent Congress was willing to modify the, uh, crack cocaine penalties. And in fact, they reduced it from 100 to 1 to 18 to 1. And then he could have used the non career offender guideline range, which I believe is 84 to 105 months as his guidepost for departing or bearing downward from the career offender range. And, uh, and if that had been on the original sentencing, he would have had latitude to do that. That's true. And so he used at the first sentencing. He used the non career offender guideline range as his, uh, guidepost for giving Mr Jackson a variance. Although, in principle, he didn't have to wait. In that sense, he could have said, I still think the 150 is too high. Um, you know, I'm under Booker, and so I'm gonna go down to whatever I want to go down to. That's true. And I sense that Judge Frost want to see what how Congress felt about, uh, the on that on that point, he was looking for guidance, not for authority. That's correct. Waiting for authority. Yeah, I agree with that. Are you finished that point? Yes. Yes, I have. So, um, I know you've got you made if you have other points. I'm sure both of you are somewhat aware of the argument yesterday and blew it. And obviously, we don't know how that's gonna come out. But do you have anything to say about whether blew it would affect this in any way, whichever way it went? No, I'm sorry. I have not given that. All right, that's fine. That's fine. Uh, my final point. I don't have the answer either. Okay, for guidance. Okay, finally, plain air. We would submit that, um, this case comes before the court under plain air review because, um, our reading of the transcript is that the government did not preserve the judge. Frost asked the Bostick question after he agreed to reduce the sentence by two years. Now, under plain air, the judge now thinks that the 126 months is the fair sentence that he would like to impose. That's true. And at the end, he what did he say? His reasoning was when he when he did that? Well, his words were I don't see how I could be logically illogical if I didn't give the defendant a reduction in light of the fact that he would have started at a lower point, uh, under the career offender range as a result of the changes by the F s a. So he referred to defense counsel thrown the Hail Mary pass and and it worked. So basically, he's saying, Well, okay, I understand that Mr Jackson's career offender range under the F s a if he were being sentenced here and now would be much lower. And previously I used that as the reference point for Jackson. And since the post F s a career offender range has been reduced by a number of years, I think it's fair to knock a couple more years off his sentence. Now that I have a discretion to do what I want to do, and they've changed the law. But right a couple of weeks after I rule, here's what I think the sentence ought to be correct. And he made the comments to counsel in the parties at the very end that he felt very good about what he did. You don't You don't have discretion. Right. I mean, that's the I mean, that's that's what the government is saying. He doesn't have the discretion. We would submit that he does. And another plain error review. I don't think that this 17% reduction from the previous sentence affects the government's substantial rights and certainly doesn't relies on Kelly saying we object to the new analysis, and the court says that has been previously raised. But okay, we note that objection. What did the court mean when it says we note that objection? It's been previously raised other than the whole argument that's been going on. I mean, as I as I read the transcript, the gentleman there is raising very much the points Mr Glassman is making that you don't have authority to make this reduction once you go through. It's not you have. You have authority to play the game. But at the end of the game, you're constrained. That's true. But I think we look we read the transcript as Mr Kelly reiterating the eligibility argument. The government views the transcript as the government or the USA in the proceedings below, um, making the argument regarding the, uh, extent of the variance. And that is, though, I didn't see the government is arguing eligibility because that they had been told by this panel they couldn't do right. We said he was eligible to be before you and to see how it shakes shook out. Okay, thank you. Anything else, colleagues? All right, Mr Glassman, you had your time for rebuttal. One thing that, um, Michael Jackson does not argue today did not argue in his brief and really has never raised is any argument that the reduction is consistent with the applicable policy statements. I don't think there is any such argument. I don't think that this court decided that. I mean, that's under the applicable guideline range argument of one B 1.10 B or whatever it is. That's the same applicable guideline range argument. Well, there's two arguments, but they're both under one B 1.10 ones under a the applicable guideline range, and then one of them is under. I think it's C, which is you can't reduce it below the amended. But both of those are governed by the statement about applicable policy. That's correct. Gotta distinguish. I think you at least I'm trying to using this word applicable in one of them is guideline range. The other is policy statement. And your whole argument has to start with the policy statement argument, right? That's correct. You have to sub. That's exactly right. But you know the confusion I tried to get around this particular point. But the problem is, it actually is the same word. That's what I mean. Yeah, I didn't say we were wrong in doing so. Yeah, is the same word. 35 82 C two says that if the if the reduction is consistent with the applicable policy statements, that's one B 1.10 the 2011 edition. There's no way to read that and say that a reduction for Mr Jackson is consistent with those. What about the eligibility paragraph there at the end that you're interpreting that as well? You mean in the last paragraph of the opinion? No, the last paragraph of one B 1.10 the the policy statement on eligibility. I don't have it before me, but in my head there is under one B 1.10. After you finish the text of the and in that commentary, the first thing they discussed, I believe, is eligibility. And that that may be interpreted several ways. It seems to me that is the first of the two arguments with respect to one B 1.10. That is one of them. The specific time part that you're talking about application one, which defines applicable guideline range as pre departure or variance. That is one of them. The other one also within one B 1.10 and also an applicable policy statement by virtual being in one B 1.10 is actually in the text of one B 1.10. And that says you can't reduce a sentence below the amended guideline range, which is also defined. So in that this case, the amended guideline range is 1 88 to 2 35. A reduction can't be below that. I see my red light is on. I'd like to make one other point with the court's indulgence. It's just that the majority opinion didn't mention the applicable policy statements at all. I don't think that the majority opinion wrote something that was clearly inconsistent with what those policy statements were. I wouldn't be by just happens to answer implication and to say otherwise, to say that there's decisional significance to a summary denial of a petition for panel rehearing would be a horrible way for this court to manage its resources. If you think about whenever the Supreme Court grants vacates and remands. Yes, you have any different answer to the question? I asked Mr Belly as a regarding blew it blew it. Is there anything likely to happen one way or the other? Would it affect this? I do not see how blue it would have any effect on this case. I'm happy to get that answer from both of you. Okay. Thank you, Counsel. Case will be submitted. Clerk may adjourn.